NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1412

RFID TRACKER, LTD.,

Plaintiff-Appellant,

v.

WAL-MART STORES, INC.,

Defendant-Appellee,

and

THE GILLETTE COMPANY,

Defendant-Appellee,

and

TARGET CORPORATION,

Defendant-Appellee.

Edward W. Goldstein, Goldstein, Faucett & Prebeg, LLP, of Houston, Texas, for plaintiff-appellant. With him on the brief were Corby R. Vowell and Alisa A. Lipski.

David G. Wille, Baker Botts L.L.P., of Dallas, Texas, for defendant-appellee Wal-Mart Stores, Inc. With him on the brief was Samir A. Bhavsar.

Kenneth R. Adamo, Jones Day, of Cleveland, Ohio, for defendant-appellee The Gillette Company. With him on the brief were Joseph D. Pollack and David M. Maiorana. Of counsel was Lawrence D. Rosenberg, of Washington, DC.

Kenneth A. Liebman, Faegre & Benson, of Minneapolis, Minnesota, for defendant-appellee Target Corporation.

Appealed from: United States District Court for the Eastern District of Texas

Judge Leonard Davis

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1412

RFID TRACKER, LTD.,

Plaintiff-Appellant,

v.

WAL-MART STORES, INC.,

Defendant-Appellee,

and

THE GILLETTE COMPANY,

Defendant-Appellee,

and

TARGET CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court for the Eastern District of Texas in case no. 6:06-CV-00363, Judge Leonard Davis.

————————————————

DECIDED:  August 18, 2009

————————————————

Before RADER, LINN, and DYK, <u>Circuit Judges</u>.

PER CURIAM.

I.

The United States District Court for the Eastern District of Texas construed the claim term "interrogator/reader" of claims 1 and 15 of U.S. Patent No. 6,967,563 ("the '563 patent") as "an interrogator/reader includes a field generator and a receiver, but not a transmitter." The parties do not dispute that the accused devices contain a transmitter. Because the district court did not err in its construction, this court affirms the final judgment of noninfringment .

II.

Plaintiff-Appellant RFID Tracker, Ltd. ("RFID"), filed a patent infringement suit against Defendant-Appellees Wal-Mart Stores, Inc., the Gillette Company, and Target Corporation (collectively referred to as "Defendant-Appellees") on August 16, 2006, in the Eastern District of Texas. RFID asserted claims 1 and 15 of the '563 patent against Defendant-Appellees. On February 11, 2008, the district court entered its claim construction order. RFID stipulated to noninfringement based on this order. The district court then entered its final judgment on March 19, 2008, dismissing this case.

The '563 patent, issued on November 22, 2005, discloses an inventory control system that includes radio frequency identification ("RFID") tags attached to inventory items, an interrogator/reader, and a computer. The interrogator/reader generates a radio frequency ("RF") field sufficient to activate every RFID tag within the field range. Once activated, the RFID tags, which contain anti-collision capabilities, communicate their unique code to the interrogator/reader. The interrogator/reader communicates the unique code to the computer. The computer includes a list of identifiers for each inventory item, unique codes for each RFID tag, and an item status for each inventory

item.  It sets the item status to true or "present" for inventory items associated with received unique codes and sets the item status to false or "absent" for inventory items from which the computer does not receive unique codes.

RFID appeals the district court's summary and final judgments and its claim construction of "interrogator/reader."  This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

III.

This court reviews a district court's claim construction de novo.  Bd. of Regents of the Univ. of Tex. Sys. v. BenQ Am. Corp., 533 F.3d 1362, 1367 (Fed. Cir. 2008).  The same standard applies to this court's review of a district court's grant of summary judgment.  Id.  "A summary judgment motion is proper if there are no genuine issues of material fact, while viewing the facts in a light most favorable to the non-moving party."  Id.

The prosecution history must be reviewed when interpreting a claim to "exclude any interpretation" that was "disclaimed or disavowed during prosecution."  Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1374-75 (Fed. Cir. 2008); ZMI Corp. v. Cardiac Resuscitator Corp., 844 F.2d 1576, 1580 (Fed. Cir. 1988).  "A patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution."  Computer Docking, 519 F.3d at 1374.

If the applicant unequivocally disavows claim scope, the doctrine of prosecution disclaimer applies even if the disclaimer results in a negative claim limitation.  See N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335 (Fed. Cir. 2005) (affirming district court's construction of claim term "generally convex" to require "a

majority of convex points along the inner wall and no concave points," as the applicant's statements in the prosecution history disclaimed coverage of an inner wall with any concavity).  Prosecution disclaimer may also arise from an applicant's statements in a parent patent application if the parent application relates to the same subject matter as the claim language at issue.  Ormco Corp. v. Align Tech., Inc., 498 F.3d 1307, 1314 (Fed. Cir. 2007).

Claim 1 recites, in part, an "interrogator/reader" that includes a "field generator" and a "receiver."  '563 patent, col.9 ll.2–34.  RFID argues that the claim uses the open-ended term "including," which, similar to "comprising," raises a presumption that the "interrogator/reader" is not limited to a "field generator" and a "receiver" and may include a transmitter.  RFID Br. at 11-16 (citing SanDisk Corp. v. Memorex Prods., Inc., 415 F.3d 1278, 1284 (Fed. Cir. 2005) ("As a patent law term of art, 'includes' means 'comprising.'  Neither includes, nor comprising, forecloses additional elements that need not satisfy the stated claim limitations.")).

Claim 15 recites a method that, in part, requires "generating a field . . . with an interrogator/reader."  '563 Patent, col.10 l.55–col.11 l.16.  The claim also requires the step of "receiving periodic signals transmitted by each field activated apparatus associated with each item within the range of the field."  Id.  While it is possible another structure could receive the periodic signals, claim 1 and the specification provide that the interrogator/reader comprises a receiver that receives each field activated apparatus's periodic signal.  Id., col.9 ll.2–34, col.3 ll.18–41 (describing the interrogator/reader as designed to generate an RF field and receive signals from the RFID tags).

The specification does not rebut RFID's alleged presumption that the interrogator/reader can include a transmitter. The specification, however, does not strengthen RFID's argument, as it only describes the interrogator/reader's receiving and field generation capabilities. See, e.g., '563 Patent, col.3 ll.23–25 (stating the system includes "an interrogator/reader designed to generate an RF field capable of activating the RFID's"); id., col.3 ll.32–38 (describing interrogator/reader capabilities as generating a field and receiving signals from RFID tags); id., col.4 ll.36–40, col.5 ll.11–14 (describing interrogator/reader's receiver capability); id., col.7 ll.7–23, ll.34–53, col.8 ll.13–18, ll.55–58 (describing interrogator/reader's field generation capability).

During prosecution before the United States Patent and Trademark Office ("PTO"), the patent examiner rejected claims 1 and 15 of the '563 patent as obvious under 35 U.S.C. § 103(a) in view of U.S. Patent No. 5,686,902 ("the Reis patent") and U.S. Pat. No. 5,539,394 ("the Cato patent"). The Reis and Cato patents disclose an interrogator that contains a transmitter that communicates with RFID tags. See Reis patent, Fig. 2, col.6 ll.39–61, col.9 l.39–col.11 l.53; Cato patent, Fig. 2, col.3 ll.31–64. In both Reis and Cato, an interrogator sends polling commands to the tags. The applicant differentiated its claims from this prior art on the ground that the claimed interrogator/reader was simple, unlike the complex readers of the prior art that contained and used a transmitter to send commands to the tags.

The district court found:

> The applicant stressed, in the Preliminary Statement sections in its responses to the 35 U.S.C. § 103(a) rejection, that the applicant's invention only requires a field to poll the inventory and the interrogator/reader "is simply a **receiver and field generator** in its **simplest form**." Id. at Ex. 5D at 11; id. at 5F at 11 ("The present invention does not require the interrogator/reader to do **anything more** than

**receive transmitted signals** from tags within the activation zone of a field generated by the interrogator/reader."); id. (stating "[t]he Reis and Cato Patents simply do not disclose, teach or suggest an inventory system where the interrogator/reader **only received** transmitted tag signals"); see also id. at Ex. 5F at 9 ("the interrogator/reader is **nothing more than a receiver** that receives a signal[], determines the unique code associated with the signal and forwards the code to the computer for updating the inventory list"). To specifically distinguish[] the present invention from the Reis and Cato Patents to transverse the 35 U.S.C. § 103(a) rejection, the applicant stated "[t]he [claimed] method . . . requires no polling and **no transmission** from the interrogator/reader, the field performs the polling, and the tags emit their uniquely modulated signals to the interrogator/reader when activated by the field . . . ." Id. at Ex. 5D at 15. Additionally, the applicant stated "[a]ll anticollision processing is handled at the tag level and not at the interrogator/reader level," which is consistent with the applicant's statements that **distinguished** the interrogator/readers disclosed in the **Reis and Cato Patents** on the basis that those interrogator/readers **transmit data** to the RFID tags. Id. at Ex. 5D at 11; id. at Ex. 5F at 9. In light of such distinctions, the applicant concluded the Reis Patent, the Cato Patent, or the combination of the two patents, does not disclose, teach, or suggest such a simple inventory control system and as a result did not render obvious the applicant's claims. Id. at Ex. 5D at 15; id. at Ex. 5F at 14.

The applicant made similar statements in response to a similar rejection during prosecution of the '563 Patent's parent application [analogous to the unamended application that became the '563 patent], which also claims an "interrogator/reader." The applicant stated "[t]he **Reis [Patent]** uses tag technology that requires the interrogator to **send signals** to the tags and receive signals from the tags in such a way as to minimize or eliminate simultaneous tag signal transmission." Id. at Ex. 4E at 12. With regard to the applicant's invention, "**[i]n distinction**, the present technology **only requires** that the interrogator generate a field and **receive tag signals** . . . ." Id. The applicant further stressed that this distinction was "**fundamental**." Id. That the Examiner did not rely on these statements, as the parent application never issued, does not negate the effect of the applicant's disclaimer. See Springs Window Fashions LP v. Novo Indus., L.P., 323 F.3d 989, 995 (Fed. Cir. 2003).

RFID Tracker, Ltd. v. Wal-Mart Stores, Inc., No. 6:06 CV 363, slip op. at 8-9 (E.D. Tex. Feb. 11, 2008) (emphases added).

In light of these statements during prosecution, RFID cannot now contend that the claimed interrogator/reader is anything more than "simply a receiver and a field

generator in its simplest form."  See Computer Docking, 519 F.3d at 1376-70 ("portable computer" limitation in preamble of claim determined to mean "a computer without a built-in display or keyboard" due to prosecution statements distinguishing prior art as "requiring a portable display and keyboard," whereas the invention did not require a built-in display and keyboard); Innovad Inc. v. Microsoft Corp., 260 F.3d 1326, 1332 (Fed. Cir. 2001) (despite lack of explicit claim limitation prohibiting device from having a keyboard, devices with keyboard were beyond scope of the claims due to disclaimer in specification).

Accordingly, this court finds the district court properly found that the applicant's statements before the PTO, in total, clearly rebut RFID's argument that the interrogator/reader can include a transmitter and disclaim an interrogator/reader that includes a transmitter.  This court affirms the district court's claim construction and summary judgment of noninfringement, finding the claim term "interrogator/reader" to mean "an interrogator/reader that includes a field generator and a receiver, but not a transmitter."

AFFIRMED


COSTS

No costs.