# United States Court of Appeals for the Federal Circuit

2009-1146

SCHINDLER ELEVATOR CORPORATION
and INVENTIO AG,

Plaintiffs-Appellants,

v.

OTIS ELEVATOR COMPANY,

Defendant-Appellee.

Joseph R. Re, Knobbe, Martens, Olson & Bear, LLP, of Irvine, California, argued for plaintiffs-appellants. With him on the brief were Jon W. Gurka, Joseph S. Cianfrani, and Cheryl T. Burgess.

Mark L. Levine, Bartlit Beck Herman Palenchar & Scott LLP, of Chicago, Illinois, argued for defendant-appellee. With him on the brief were Sean W. Gallagher, and Alan E. Littmann.

Appealed from: United States District Court for the Southern District of New York

Judge Colleen McMahon

# United States Court of Appeals for the Federal Circuit

2009-1146

SCHINDLER ELEVATOR CORPORATION
and INVENTIO AG,

Plaintiffs-Appellants,

v.

OTIS ELEVATOR COMPANY,

Defendant-Appellee.

Appeal from the United States District Court for the Southern District of New York in case no. 06-CV-5377, Judge Colleen McMahon.

_____

DECIDED:  January 15, 2010

_____

Before LINN, FRIEDMAN, and DYK, Circuit Judges.

Opinion for the court filed by Circuit Judge LINN.  Opinion concurring in the result and dissenting in part filed by Circuit Judge DYK.

LINN, Circuit Judge.

Schindler Elevator Corp. and Inventio AG (collectively "Schindler") appeal the final decision of the U.S. District Court for the Southern District of New York, which entered summary judgment in favor of Otis Elevator Co. ("Otis") of noninfringement of U.S. Patent No. 5,689,094 ("the '094 patent").  Schindler Elevator Corp. v. Otis Elevator Co., 586 F. Supp. 2d 231 (S.D.N.Y. 2008) ("Summary Judgment Order"); Schindler Elevator Corp. v. Otis Elevator Co., 561 F. Supp. 2d 352 (S.D.N.Y. 2008) ("Claim Construction Order").  Because we conclude that the district court erred in construing

the terms "information transmitter" and "recognition device" to exclude any "personal action" by an elevator user other than "walking into the monitored area," we vacate the grant of summary judgment and remand for further proceedings.

BACKGROUND

The '094 patent is directed to an elevator system that recognizes a user when he or she enters an entry location of a building, then dispatches an elevator to bring the user to a destination floor based on user-specific data. The system recognizes the user in one of two ways. In a first embodiment, a user carrying an "information transmitter" brings his transmitter within range of a "recognition device" mounted in the building's entry location. Once in range, the transmitter is actuated by an electromagnetic field emitted from the recognition device and then transmits preprogrammed data regarding the user's destination floor. Alternatively, in a second embodiment, the recognition device recognizes the user by his "individual features," such as facial contours, fingerprints, iris, or voice. In either embodiment, once the system has recognized the user, the system identifies the user's destination floor based on the data it received, dispatches an elevator to the user's starting floor, and informs the user which elevator to take. The user thus arrives at a destination floor without having to press any button outside or inside the elevator to designate the destination floor.

Figure 2, reproduced below, illustrates an exemplary elevator installation **30** with recognition devices **5** mounted in access areas **33** and **34**. When a passenger **35** is recognized in access area **33**, an elevator is dispatched, and a display device **18**, which is mounted above the elevator door and/or at an input device **19**, tells the passenger which elevator to take. A proposed destination floor is announced acoustically or is

2009-1146                                                2

displayed visually on display device **18**. If the passenger wishes to change his destination floor, he may do so manually at input device **19**.



Fig. 2

Schindler sued Otis for infringing all claims of the '094 patent. Because the patent's two independent claims recite an "information transmitter carried by an elevator user," Schindler concedes that all claims are directed only to the "information transmitter" embodiment, and not to the "individual features" embodiment. Br. of Pls.-Appellants 8.

Claim 1 of the '094 patent is representative of the asserted claims with respect to the use of the terms "information transmitter" and "recognition device." It recites:

1. An elevator installation having a plurality of elevators comprising:

a recognition device for recognizing elevator calls entered at an entry location by an information transmitter carried by an elevator user, initializing the entry location as a starting floor of a journey;

a control device receiving the recognized elevator call and allocating an elevator to respond to the elevator call, through a predetermined allocating algorithm;

a call acknowledging device comprising one of a display device and an acoustic device to acknowledge recognition of the elevator call and to communicate a proposed destination floor to the elevator user;

the recognition device, mounted in the access area in the vicinity of the elevators and spatially located away from elevator doors, actuating the information transmitter and comprising a unit that independently reads data transmitted from the information transmitter carried by the elevator user and a storage device coupled between the unit and the control device: [sic: ;]

the recognition device one of transmitting proposed destination floor data, based upon the data transmitted from the information transmitter, to the control device, and, transmitting elevator user specific data. [sic: ,] based upon individual features of the elevator user stored in the storage device, to the control device.

Otis's accused system is installed at 7 World Trade Center in New York City. Each user carries a card embedded with a radio frequency identification ("RFID") chip, which is programmed with a user identification number. Upon entering the building, the user approaches a bank of security turnstiles located in the building's lobby. Each turnstile is 37.5 inches high and contains an electronic card reader located 1 inch below an upper glass surface of the turnstile. The maximum effective range of the card reader is 4.5 inches, or 3.5 inches from the top of the glass surface. When a card is brought within this range, the card transmits the user's identification number to the card reader, an elevator is dispatched, and the elevator's number is displayed on the turnstile to let the user know which elevator to take.

On April 4, 2008, the district court construed nine disputed sets of claim limitations. Only the first set—"information transmitter" and "recognition device"—is challenged on appeal. The district court construed "information transmitter" to mean "a device that communicates with a recognition device via electromagnetic waves, after being actuated by that recognition device, without requiring any sort of personal action by the passenger." Claim Construction Order, 561 F. Supp. 2d at 362. It construed "recognition device" to mean "a device that actuates and reads data transmitted by an information transmitter without requiring any sort of personal action by the passenger." Id. In the claim construction order, the district court declined to specify the particular kind of "personal action" prohibited under its construction, but stated that it "rules out, not just standing in front of the recognition device, or inputting data into the information transmitter by hand, but any and all types of personal action by the passenger." Id. (emphasis added).

The parties then cross-moved for summary judgment on the issue of infringement. Schindler argued that the RFID cards of the accused system are "information transmitters" and that the card readers embedded in the security turnstiles are "recognition devices." Otis countered that neither of these limitations is met because the use of a passenger's hands to bring a RFID card within the 3.5-inch effective range of a card reader constitutes prohibited "personal action."

The district court issued its summary judgment ruling on November 17, 2008. Although it had previously said that "any and all types of personal action" were prohibited under its construction, the district court refined its understanding of "personal action" on summary judgment to expressly permit "walking into the monitored area."

<u>Summary Judgment Order</u>, 586 F. Supp. 2d at 237.  The district court went on to note that a user of the accused device must "do something in order to bring the card (not just themselves) to a point at which the device embedded in the turnstiles can read it," such as taking the card out of a pocket or holding the card over the glass surface of the turnstile.  <u>Id.</u> at 238.  Accordingly, the district court held that Otis's accused system could not meet the "information transmitter" and "recognition device" limitations and thus did not infringe the '094 patent as a matter of law.

Schindler appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(1) (2006).

## DISCUSSION

### I.  Standard of Review

"An infringement analysis entails two steps.  The first step is determining the meaning and scope of the patent claims asserted to be infringed.  The second step is comparing the properly construed claims to the device accused of infringing."  <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc) (citations omitted), <u>aff'd</u>, 517 U.S. 370 (1996).  Claim construction is a question of law, which we review de novo.  <u>Cybor Corp. v. FAS Techs., Inc.</u>, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).  "While infringement is a question of fact, we review a district court's grant of summary judgment without deference."  <u>Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.</u>, 533 F.3d 1362, 1367 (Fed. Cir. 2008) (internal citations omitted).  Summary judgment is proper only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

## II. Analysis

Schindler challenges the district court's construction of the terms "information transmitter" and "recognition device." Schindler also challenges the district court's grant of summary judgment of noninfringement, under the district court's construction and under Schindler's proposed construction.

## A. Claim Construction

Schindler argues that the district court improperly limited the terms "information transmitter" and "recognition device" by requiring those devices to operate "without any sort of personal action by the passenger" and by further defining "personal action" to mean any action "other than walking into the monitored area." According to Schindler, nowhere does the intrinsic evidence prohibit a passenger from using his hands to simply bring an information transmitter within range of a recognition device. The phrase "personal action" appears only once in the specification. In Schindler's view, "personal action" encompasses the action of manually pressing buttons to actuate the transmitter or to select a destination floor, not to the initial act of bringing the transmitter within range of the recognition device. Schindler therefore requests that we remove any reference to "personal action" from each construction.[1]

Otis responds that the district court correctly relied on statements in the specification and prosecution history that describe "hands-free," "automatic," and "contactless" elevator operations, as clearly disavowing all "personal action."

---

[1] Schindler also requests that we strike the phrase "via electromagnetic waves" from the district court's construction of "information transmitter." But the construction of "information transmitter" that Schindler proposed to the district court included that very phrase. We therefore decline to alter the district court's construction as it pertains to electromagnetic waves.

As we shall explain, we agree with Schindler that the district court's construction is too narrow. The statements in the specification and prosecution history on which the district court relied were directed to elevator operations that occur only <u>after</u> the information transmitter is already within range of the recognition device, not to the initial act of bringing the information transmitter within range of the recognition device.

A claim term is generally given its "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). "[T]he court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean,' . . . . includ[ing] 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" <u>Id.</u> at 1314 (quoting <u>Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.</u>, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). Because the parties do not rely on any extrinsic evidence, we focus our analysis on the claim language, the specification, and the prosecution history.

### 1. Claim Language

"Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms." <u>Id.</u> Here, the district court overlooked several important aspects of the claim language which themselves shed light on whether and to what extent an elevator user undertakes "personal action" in the invention.

First, "the context in which a term is used in the asserted claim can be highly instructive." Id. In claim 1, the term "information transmitter" itself suggests that the transmitter is a thing, separate and apart from an "elevator user" (a separate limitation), which transmits information. The claim also provides that "elevator calls [are] entered at an entry location by an information transmitter." Thus, at least with regard to the transmission of information and the entry of calls, it is the information transmitter—not the elevator user—that performs these tasks. Similarly, the claim provides that a "recognition device . . . actuat[es] the information transmitter" and that "a unit . . . independently reads data transmitted from the information transmitter." Accordingly, the tasks of actuating the transmitter and reading data are performed by the recognition device and the unit, respectively, not by the elevator user. The claim also explicitly provides that the transmitter is "carried by an elevator user." Carrying a transmitter is thus a type of "personal action" that is expressly required in the claims. Nowhere does claim 1 limit the act of carrying to any specific manner of carrying.

Second, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." Id. Claim 7 depends from claim 1 and adds the phrase "wherein the recognition device reads a key having a code." A "key" is disclosed in the specification as a "building key," which is embedded with an information transmitter that is actuated by a recognition device mounted near a "door lock" of a building. '094 patent col.5 ll.30-32. The door lock recognizes the building key when the passenger uses his key to open the door. Id. col.5 ll.32-33. The specification, in describing a variation of this information transmitter "key" embodiment, notes that the recognition device may be mounted near a "time

clock," and an elevator is dispatched when a user clocks in or out of work. Id. col.5 ll.33-35. Because a user would need to use his hands to bring the transmitter key within range of the recognition device to unlock the door, or to clock in or out of work, these types of personal action are implicitly permitted in claim 7 and, by extension, in claim 1. Thus, the claims appear to permit at least those types of personal action that are necessary to bring the information transmitter within range of the recognition device.

### 2. Specification

"[C]laims 'must be read in view of the specification, of which they are a part.'" Phillips, 415 F.3d at 1315 (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" Id. (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

The phrase "personal action" is used only once in the specification, in the following sentence:

> The advantages achieved by the invention reside in the fact that the desired journey destination is communicated automatically to the elevator control by [(1)] the information transmitters carried by the elevator users or by [(2)] the recognition of features of the elevator users without any personal action being required by the passenger.

'094 patent col.2 ll.49-54 (emphases and bracketed numbers added). Notably, this sentence refers to the patent's two disclosed embodiments: (1) the claimed "information transmitter" embodiment and (2) the unclaimed "individual features" embodiment.[2] In

---

[2] The concurring opinion asserts that, because the "individual features" embodiment was "abandoned," it would not be relevant to the scope of the disclaimer of

the latter, instead of actuating an information transmitter, the recognition device "recognizes a passenger with the aid of an individual feature, for example in an optical manner (facial contours, finger prints [sic], iris, etc.) or by reason of the speech thereof." Id. col.4 ll.48-51 (emphasis added). Because a passenger would need to place his hand on the optical recognition device for it to read his fingerprints, this cannot be the "personal action" to which the sentence refers. Instead, the structure of the sentence— "communicated . . . by [(1)] . . . or by [(2)]"—makes clear that the two enumerated embodiments are the means by which "the desired journey destination is communicated," and that the ultimate phrase "without any personal action being required by the passenger" describes how the information is communicated. The sentence says nothing about how the passenger initially brings his transmitter (or fingerprints) within recognition range, but merely that, once in range, he need not use personal action to communicate his journey destination to the elevator control.

The same is true of all statements in the specification describing "hands-free," "automatic," and "contactless" elevator operations. Each time those terms are used, they modify the elevator's "call entry" operation, an operation that necessarily occurs after the information transmitter has been brought within range of the recognition device and after the transmitter has been actuated by the recognition device. Id. Abstract ("[T]he call entry taking place automatically, contactless and independent of the orientation of the information transmitter . . . ." (emphasis added)), col.4 ll.27-29 ("The

---

"personal action." Post at 4 n.3. With all due respect, neither assertion is correct. The embodiment was not "abandoned," it simply was never claimed in the application that led to this particular patent. Moreover, because the phrase "without any personal action" applies equally to both embodiments, the latter embodiment is indeed relevant to discerning what kinds of "personal action" this sentence prohibits.

entire operation of the <u>call entry</u> takes place hands-free, contactless and independent of the orientation of information transmitter . . . ." (emphasis added)).  As previously discussed, the claims themselves provide that "elevator calls [are] entered at an entry location by an information transmitter" rather than by the user, so the specification merely confirms that the user does not manually enter the call.

Contrary to the district court's prohibition against all actions other than walking, the specification itself provides examples where a user would need to do more than just walk to bring his transmitter into recognition range.  As mentioned, the "key" embodiment of claim 7 requires a user to unlock a door using a key, and only upon "opening of the door" by the user will an elevator be dispatched. <u>Id.</u> col.5 ll.27-35.  The transmitter "can also be mounted on any desired object," <u>id.</u> col.4 ll.64-65, like a "luggage or shopping cart," and an elevator is dispatched when the user pushes his cart into the vicinity of the recognition device, <u>id.</u> col.5 ll.1-13.  Thus, unlocking a door and pushing a cart are two "personal actions," other than simply walking, which are disclosed in the specification as actions needed to bring a transmitter within range of the recognition device.  Once in range, the transmitter is actuated by the recognition device and transmits its encoded data without personal action by the user.

### 3. Prosecution History

"[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." <u>Phillips</u>, 415 F.3d at 1317.

During prosecution, Schindler amended the claims in response to an obviousness rejection over U.S. Patent No. 5,304,752 ("Hayashi") in view of U.S. Patent No. 4,685,538 ("Kamaike"). It was at this time that Schindler first added the "information transmitter" limitation to the claims, and further required that the transmitter be "actuat[ed]" by the recognition device. J.A. 314-17 ("the recognition device . . . actuating the information transmitter" (amendment emphasized)). Schindler argued that Hayashi "fails to show calls for the elevator made by a transmitter identifying the destination of the passenger," J.A. 319, and that Kamaike, which requires a user to manually actuate a transmitter by pressing buttons, "fails to disclose or suggest . . . a recognition device actuating a transmitting device carried by the elevator user for transmitting data," J.A. 322. Schindler went on to explain:

> Because the information transmitter of the present invention is not equipped with user operable keys, it is not necessary that the information transmitter be in the elevator user's hands to select the desired floor. Thus, the call commands are pre-programmed to occur automatically, contactlessly, and independently of the orientation of the information transmitter.

J.A. 320. The examiner allowed the claims to issue in amended form.

The district court reviewed the prosecution history and concluded that Schindler had surrendered coverage of its originally claimed invention and, through its arguments, had disavowed any coverage of elevator systems that do not operate "automatically" and "hands-free." Claim Construction Order, 561 F. Supp. 2d at 361. We agree with the district court that Schindler is not entitled to any interpretation that it disclaimed during prosecution. See Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'" (quoting ZMI Corp.

v. Cardiac Resuscitator Corp., 844 F.2d 1576, 1580 (Fed. Cir. 1988))).  But we disagree as to the extent of that disclaimer.

The doctrine of prosecution disclaimer attaches where an applicant, whether by amendment or by argument, "unequivocally disavowed a certain meaning to obtain his patent."  Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1324 (Fed. Cir. 2003).  For example, an amendment that clearly narrows the scope of a claim, such as by the addition of a new claim limitation, constitutes a disclaimer of any claim interpretation that would effectively eliminate the limitation or that would otherwise recapture the claim's original scope.  Here, the district court construed the term "recognition device" as a device that "actuates and reads data transmitted by an information transmitter."  Because this construction already provides that the recognition device—not the elevator user—actuates the transmitter, there is no risk that Schindler would recapture a broader claim scope than that existing before it added the "information transmitter" and "actuating" language to the claims.

An argument made to an examiner constitutes a disclaimer only if it is "clear and unmistakable."  Purdue Pharma L.P. v. Endo Pharms., Inc., 438 F.3d 1123, 1136 (Fed. Cir. 2006).  An "ambiguous disavowal" will not suffice.  Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1375 (Fed. Cir. 2008).  Here, the district court found statements in the prosecution history, similar to those in the specification, which describe the invention as operating "automatically, contactlessly, and independently of the orientation of the information transmitter."  The district court read these statements as unambiguously disavowing the use of a passenger's hands for any and all purposes.  We disagree.  As in the specification, those terms modify actions that take place only

<u>after</u> the passenger has brought the transmitter within range of the recognition device—specifically, the actuation of the transmitter, the entry of call commands, and the selection of a destination floor. J.A. 320 ("[I]t is not necessary that the information transmitter be in the elevator user's hands <u>to select the desired floor</u>." (emphasis added)); 320 ("Thus, the <u>call commands</u> are pre-programmed to occur automatically, contactlessly, and independently of the orientation of the information transmitter." (emphasis added)); 322 ("[N]either applied document of record discloses or suggests, inter alia, the unique hands-free, automatic, and contactless elevator <u>call system</u> recited in the pending claims via a recognition device that <u>actuates</u> a transmitting device . . . ." (emphases added)); 325 ("Because none of the applied documents of record disclose or suggest <u>actuation</u> of the transmitting device by the recognized device, recited in the combination of features in at least independent claim 1, to enable truly hands-free <u>operation of elevator calls</u>, Applicants respectfully submit that no combination of the applied documents of record can even arguably render obvious the present invention as recited in claim 7." (emphases added)). Significantly, the last of these prosecution statements is specifically directed to dependent claim 7, which recites the "key" feature. It is clear that "truly hands-free" modifies "operation of the elevator calls" and does not—indeed, can not—refer to the initial act of bringing the key within range of the recognition device. None of these statements speaks to the role a user plays in bringing a transmitter within range of a recognition device; nor was the prior art distinguished on that basis. These prosecution statements, which, contrary to the concurrence, the applicant actually made and not merely could have made, do not constitute a "clear and

unmistakable" disavowal of personal action for the limited purpose of bringing the transmitter within range of the recognition device.

Instead, we read the prosecution history in this case "as support for the construction already discerned from the claim language and confirmed by the written description." 800 Adept, Inc. v. Murex Sec., Ltd., 539 F.3d 1354, 1365 (Fed. Cir. 2008). That construction excludes coverage of systems in which an elevator user manually presses buttons to actuate the information transmitter or to select a default journey destination. Those types of personal action are properly excluded under the portions of the district court's existing construction specifying that the information transmitter is what "communicates with a recognition device via electromagnetic waves, after being actuated by that recognition device," and that the recognition device is what "actuates and reads data transmitted by an information transmitter." However, a user ought to be able to use his hands, or take other personal action, to simply bring the transmitter within the effective range of the recognition device.[3] We therefore modify the district court's construction of "information transmitter" and "recognition device" by striking the phrase "without requiring any sort of personal action by the passenger" from each construction.

---

[3] The concurring opinion would only allow a user to take personal action to the extent that the action is "required to gain entry to the building," but would prohibit a user from otherwise taking personal action simply to bring the transmitter within range of the recognition device. Post at 2. Respectfully, there is nothing in the language of the claims, the specification, or the prosecution history that draws such a distinction. As explained above, the intrinsic evidence speaks only to user actions taken after the transmitter is within recognition range; it is entirely unconcerned with the way in which the transmitter initially gets there.

2009-1146                          16

## B. Infringement

Under our modified construction of "information transmitter" and "recognition device," Schindler's evidence was sufficient to create a genuine issue of material fact that the RFID cards of the accused system communicate with a card reader via electromagnetic waves after being actuated by the card reader, and that the card reader actuates and reads data transmitted by the RFID cards. On that basis, the district court should not have granted summary judgment of noninfringement.

Below, Otis also moved for summary judgment of noninfringement under the district court's construction of two other limitations ("in the vicinity of the elevators" and "coupled between"), which the district court did not reach. The parties have not challenged the construction of those limitations on appeal. Otis's arguments that it does not infringe under the district court's construction of those two limitations thus remain open for consideration on remand.

## CONCLUSION

We modify the district court's construction of "information transmitter" and "recognition device" by striking the phrase "without requiring any sort of personal action by the passenger" from each construction. We vacate the grant of summary judgment of noninfringement and remand for further proceedings consistent with this opinion.

<u>VACATED</u> and <u>REMANDED</u>

## COSTS

Costs to Schindler.

# United States Court of Appeals for the Federal Circuit

2009-1146

SCHINDLER ELEVATOR CORPORATION
and INVENTIO AG,

Plaintiffs-Appellants,

v.

OTIS ELEVATOR COMPANY,

Defendant-Appellee.

Appeal from the United States District Court for the Southern District of New York in case no. 06-CV-5377, Judge Colleen McMahon.

DYK, Circuit Judge, concurring in the result and dissenting in part.

I agree that the "without requiring any sort of personal action" construction imposed by the district judge unduly limited the scope of the claims. As the majority opinion points out, dependent claim 7 contemplates using a key (or a card swipe) to enter the building and at the same time transmitting the user's elevator data. See Majority Op. at 9-10. Such an action is covered by the claims, as the specification also makes clear.[1] Here, it is admitted that the same card swipe process gains entry to the building and calls the elevator. Thus, the recognition device and information transmitter

---

[1] The specification provides: "A further variation consists in that information transmitter **1** is not carried along as a separate card, but executed as coded key means. For example, in a residential or in an office building, the building key can be provided with information transmitter **1**. Recognition device **5** is then mounted at the door lock so that elevator control **10** also receives the destination call upon the opening of the door." '094 patent col. 5 ll.27-33.

claim limitations are satisfied, because using the building key to call the elevator requires no additional personal action by the user.

Unfortunately, the majority is not content to rest its decision on this simple point. Rather, it interprets the claim broadly as including a swipe card device that is not tied to building access and declines to give effect to the significant disclaimer appearing in both the specification and prosecution history—disclaiming devices that are not "hands-free" and "automatic." Contrary to the majority, it seems to me that the action of swiping a card to call the elevator separate from the action required to gain entry to the building is clearly within the disclaimer of both the specification and prosecution history.

How does the majority avoid this disclaimer? The majority's theory is that there is no requirement of hands-free or automatic action until the transmitter is within range of the recognition device. In other words, the device would be "hands-free" and "automatic" even though the user has to take elaborate action to bring the device within range. See Majority Op. at 16 ("[A] user ought to be able to use his hands, or take other personal action, to simply bring the transmitter within the effective range of the recognition device"). I find this reading of the disclaimer to be inherently improbable and quite inconsistent with the language of the specification and prosecution history. The specification and prosecution history make no such distinction, and consistently emphasize the hands-free and automatic nature of the device without regard to whether it is in range or not. The specification requires that "the desired journey destination [be] communicated automatically to the elevator control by the information transmitters carried by the elevator users . . . without any personal action being required by the passenger," '094 patent col.2 ll.49-54 (emphasis added), and that the entire call entry

take place "hands-free, contactless and independent of the orientation of the information transmitter," id. at col.4 ll.27-29. The prosecution history similarly distinguishes the prior art on the ground that the call commands occur "automatically, contactlessly, and independently of the orientation of the information transmitter." J.A. 320. Neither the specification nor the prosecution history distinguished between actions taken within range or out of range of the recognition device.

The patentees, unlike the majority, argue that the disclaimer has no application to devices where the signal came from the recognition device.[2] On this theory, the disclaimer is rendered entirely meaningless because the patent only covers devices in which the signal is initiated by the recognition device, and the disclaimer is read only to apply to devices in which the signal is initated by the transmitter.

The prior art device involved a system whereby the user activated a transmitter by entering a code that signaled the recognition device. The applicant could have distinguished this prior art solely on the ground that the signal here goes from the recognition device to the transmitter. The applicant did not choose to rest on this ground alone (likely because this was an obvious variant of the prior art), but instead emphasized that the patented device was distinguishable both because of the signal direction and because it was hands-free and automatic. The patentee agreed at oral

---

[2] At oral argument, appellant stated that "[i]f the signal is initiated from the card, that is disclaimed by the amendment . . . . It doesn't matter whether the actuation is by buttons . . . . The point is, the initiation of the communication is initiated by the recognition device so that the card can now be passive . . . . That was the distinction [made in the prosecution history], not whether it was buttons or not, but the actuation no longer came from the information transmitter." Oral Arg. at 40:43-41:27 (emphasis added).

argument that a card swipe was no less covered by the disclaimer than the pressing of buttons.

We have repeatedly held that a disclaimer cannot be avoided simply by pointing out that the prior art could have been distinguished on another ground. See, e.g., Norian Corp. v. Stryker Corp., 432 F.3d 1356, 1361-62 (Fed. Cir. 2005) (holding that patentees must be held to the scope of what they ultimately claim, and are not allowed to assert that claims should be construed to surrender only what was necessary to avoid the prior art); Fantasy Sports Properties, Inc. v. Sportsline.com, Inc., 287 F.3d 1108, 1115 (Fed. Cir. 2002) ("Fantasy acquiesced in [the examiner's] rejections by canceling all claims that did not contain the 'bonus points' limitation at issue on appeal, and thus cannot now be heard to argue post hoc that it was the combination of the aforementioned limitations that rendered its invention patentable over the prior art."). Schindler's disclaimer must be based on what he said, not on what he could have said. Thus, I find Schindler's reading of the disclaimer to be just as untenable as the majority's reading.

A competitor reading the specification and the prosecution history is entitled to rely on the patent and prosecution history. In my view, the majority's claim construction artificially eliminates that disclaimer in limiting it to actions taken after the transmitter is in range of the recognition device.[3]

---

[3] The majority opinion also appears to rely on the unclaimed "individual features" embodiment relating to finger print recognition. See Majority Op. at 10-11. Given that this embodiment was abandoned, I do not think that it suggests anything regarding the scope of the claims that were retained. In particular, the prosecution history disclaimer cannot have been addressed to the abandoned claims.